Angel Samuel Bonilla, Petitioner, v. Industrial Commission of Puerto Rico, Respondent; Insular Police Department, Employer.

No. 277. Argued December 13, 1943.—Decided May 5, 1944.

Ismael Soldevila for petitioner. Joaquín Correa ·Suárez, legal adviser of the State Insurance Fund, for the Industrial Commission.

Mr. Chief Justice ·Travieso delivered the opinion of the court.

The petitioner was, at the time of the accident for which he seeks compensation, a policeman rendering service in the city of Mayagüez.

In the petition for review filed in this court, the petitioner alleges that in the discharge of his duties and while performing acts inherent to the same, that is, running after some men who were disturbing the peace, he fell "to the ground hitting the same with his buttocks as if he had been seated down violently, and getting in his left eye a foreign body such as mud, dust or earth, considering the irritation

it caused." He further alleges that in the employer's report filed pursuant to the Workmen's Compensation Act, said fall was not mentioned, since apparently it did not seem to have been of any consequence, and that he, a layman, was unaware that it could affect the eye. That after petitioner had undergone treatment and an examination by the physician of the State Insurance Fund, it was found that he had suffered a detachment of the retina of the left eye, losing vision of that eye.

The State Insurance Fund, relying on the medical report of Dr. Cuello, the eye specialist who had examined the petitioner, decided the case by holding that the detachment of the retina had not been caused by any labor accident. Petitioner appealed from said decision to the Industrial Commission, which, after hearing both parties, rendered a decision on July 15, 1943, upholding the decision of the State Insurance Fund. Petitioner sought a reconsideration of said decision, but the commission denied the same on August 6, 1943. Thereupon the injured man brought the present appeal praying for a review of the decision rendered by the commission and in support of his petition he assigns ten errors in his brief. Since they are all connected with the weighing of the evidence, we shall discuss them jointly.

The only controversy involved herein is whether the Industrial Commission erred in the weighing of the evidence which consisted of expert testimony. There is no conflict in the evidence. The facts, in brief, are as follows:

Insular Policeman Angel Samuel Bonilla was rendering services within the "boundary of Buena Vista" in the city of Mayagüez, on the night of December 16, 1939. About ten or eleven o'clock that night and while he served "with policeman Norberto Toro in pursuit of some serenaders," he slipped and fell, due to the rain, thereby soiling his clothes, for which reason he had to go to his home and change. Af-

ter this, he continued rendering service and about two hours after the accident, he began to feel an irritation in his left eye, as if it burned, and felt a pain on the "bone of the eye" (*sic*), but he attributed this to "probably some dust from the street." That night, about two o'clock, and since the irritation continued, he returned to headquarters and reported his condition, being then released from service that night. Later he went to Dr. Perea of Mayagüez, who, after an examination, sent him to Ponce, to Dr. Leovigildo Cuello, an eye specialist. Upon being examined, the latter, asked him if he had suffered any accident or traumatism of any kind, or an injury in the eye, to which the injured laborer answered in the negative. As Dr. Cuello did not find any foreign body in the eye, nor an irritation or inflammation, he diagnosed "detachment of the retine of the left eye."

The State Insurance Fund, relying on this diagnosis, rendered a decision on January 2, 1940, denying the compensation on the ground that the injury sustained by Policeman Bonilla was not of the kind compensable under Act No. 45 of April 15, 1935, as occupational diseases, and neither was it a labor accident, since there was no causal connection between the alleged accident (introduction of a foreign body in the eye) and the detachment of the retina.

In his appeal before the Industrial Commission the petitioner described the accident as follows:

"While I was on duty within the demarcation 'Buena Vista' of Mayagüez, P. R., at night, at 2:00 a. m., I felt a strong irritation in the eye and I could not see clearly, which was probably due to some dust from the street that fell in my eye." He further stated that: "At present I am under treatment of Dres. Fernández, of San Juan, P. R." and added that he felt aggrieved by the decision of the Manager of the State Insurance Fund: "Because I believe that the condition of my left eye has the relation of cause and effect with the work I was performing at said hour, about which

I shall testify at the hearing, and, therefore, treatment and compensation should be granted."

Neither in the employer's report nor in the appeal filed in the Industrial Commission by policeman Bonilla, was there any mention made at any time, of the fall he had sustained while in the pursuit of some serenaders. Not until March 26, 1941, at the public hearing before the President of the Industrial Commission, Mr. Manuel León Parra, did petitioner's attorney allege for the first time that the detachment of the retina was due to the accident that Bonilla sustained before feeling any pain in his left eye.

At the hearing Dr. Leovigildo Cuello and Dr. M. A. Mariani testified, the former as medical expert of the State Insurance Fund and the latter for the Industrial Commission.

Dr. Cuello's testimony may be summed up thus:

On December 20, 1939, Bonilla's case was referred to him by Dr. Perea of Mayagüez, as having suffered "an accident in the left eye" on December 16 of the same year; that he examind him on December 20; that he confined him in the Hospital de Damas to examine him again and left him under observation until December 21. That Bonilla gave him the employer's report and stated that when he was on service in a particular ward of Mayagüez he had felt a pain and and a strong irritation in his left eye but believed that some sand had fallen in his eye. That he examined him and did not find any foreign body nor any trace of irritation in the eye, but upon examining the back part of the eye ball he realized that there was a detachment of the retina without other injuries to the eye.

Dr. Cuello also explained that detachment of the retina may be due to two causes:

1. Secondary detachment which is due to a previous pathological condition of the eye, such as a tumor of the choroid or an injury to the head, and that myopia may also produce retinal detachment. Besides in elderly people, due to "a

certain pathological condition inside the eye'' retinal detachment may result, as well as from certain lesions of the retina itself, such as tuberculosis, syphilis, and any other infection or condition.

2. Idiopathic or primary detachment of the retina, which means that the retina becomes detached without any pathology being demonstrable previous to or subsequent to the detachment.

He further testified that besides those two causes it has been noted that detachment of the retina may result from direct traumatism on the eye ''and it has been cited an exaggerated to such an extent as to the cause'' that it has even been said that the detachment of the retina may be caused by a sudden jerk of the head or an injury on the skull. Dr. Cuello added that since it was his duty to give an exact diagnosis, without any personal interest, he questioned Bonilla in detail; that he told the patient that there was no foreign body in his eye, or any irritation, and that ''he wanted it to be known that the detachment of the retina causes no pain or irritation in the eye''; that the patient realizes that he has a detachment of the retina because of disturbances in the vision, and for that reason he ''subscribed'' (sic) his report denying the relation of cause and effect since the petitioner did not show any recent traumatism in his left eye, or any painful or irritated condition; that the eye had a normal appearance; that from practice he has learned that in cases like petitioner's the cause lies in the retina, according to the disturbances which the petitioner felt in the eye; that he questioned him in detail as to whether he had sustained an injury in the eye or traumatism of any kind and when the workman answered in the negative, that this ''pain'' in the eye was exclusively due to some dust that fell in his eye, under these conditions and without having found any lesion in the eye or external signs of traumatism, he diagnosed detachment of the retina. ''That

from the moment he did not accept the relation of cause and effect, he believed that it was an idiopathic detachment, an spontaneous detachment of the retina, and not of a traumatic origin." Dr. Cuello also testified that he knows of no case of a detachment of the retina caused by a fall, where a person falls sitting down from his own feet, and what predominates in the mind of the specialist in determining the detachment of the retina, is above all the direct traumatism.

On cross-examination, Dr. Cuello was asked whether an indirect traumatism could cause the detachment of the retina, and he answered that "personally he was not acquainted with any case nor did he remember having read about any; that he had not seen any literature nor any case of the detachment of the retina where a person falls from his own feet sitting down."

Dr. M. A. Mariani, eye specialist and adviser of the Industrial Commission who was appointed by the latter to examine the petitioner and make a report, testified at the hearing of February 25, 1943, before Associate Commissioner, Mr. Francisco Paz Granela, as follows:

"That after examining Bonilla he reached the conclusion that Bonilla was suffering from a detachment of the retina which he was unable to see because the eye had been subjected to a surgical operation and that the transparent sections of the eye were opaque for which reason he could not see the back part of the eye ball. However, from the history and the information which the Commission sent him as well as that which the patient offered him, he reached the conclusion that petitioner was suffering from a detachment of the retina. That the patient had lost sight of that eye and showed signs of an inflammation of the internal membranes of the eye. He further testified that the fact that a person falls backward from his own feet can not produce the detachment of the retina unless said person is predisposed otherwise; that in 99½ per cent of the cases, a fall of that nature

does not produce a detachment, of the retina in normal persons, "who do not have the tendency to a detachment of the retina; that such a fall, according to his experience and the experience of others, and to the statistics of other authors, does not produce the detachment of the retina."

Upon the introduction of such evidence, the Commission reached the following conclusions in its decision of July 15, 1943:

"We are not convinced that any dust fell in the left eye of policeman Angel Samuel Bonilla while on duty or that this was the cause of the detachment of the retina, inasmuch as, according to Angel Samuel Bonilla himself, and his friend, on December 16, 1939, it rained in the same place where they were both rendering services, and there was no dust in the street, but mud, and, besides, because upon being examined by the specialist, Dr. Cuello of Ponce, no foreign body of any kind was found in the left eye of Angel Samuel Bonilla, nor did the eye show any irritation or inflammation. When petitioner amended . . . his allegation in the sense that he had had an accident by falling backwards when he was running after certain persons who were serenading at late hours that night, a contradiction, in our opinion, arose inasmuch as if he went running after those who were serenading . . . . the logical reasoning would be that the policeman should have fallen forward instead of in a sitting position or backwards, and should have injured or bruised his face or hands, and none of these things appeared when the policeman was examined by the specialist . . . . conceding that when the policeman tried to run he fell from his own feet, sitting down, still this is not a traumatism which produces the detachment of the retina as held by the expert physicians, inasmuch as it was a slight fall from which he got up immediately, went to his home, changed his clothes and returned to his work. It was after all this that the police himself states that he began to feel, according to him, a pain and irritation in his left eye. Yet, the specialist did not find any irritation or inflammation in his left eye.

\* \* \* \* \* \* \*

The medical experts Leovigildo Cuello and M. A. Mariani, oculists, found no cause whatsoever of the detachment of the retina of policeman's left eye which could have any relation with the first version of the accident in the sense that some dust of the street fell in his

eye, nor with the second version invoked much later in the sense that he had fallen backwards.''

It is obvious that in view of such evidence the Industrial Commission was barred from rendering a decision awarding compensation to the petitioner. The testimony of the expert physicians are not at all favorable to the petitioner, since the expert for the Fund as well as petitioner's own expert, denied the causal connection between the accident sustained by the petitioner and the injury for which the latter prays compensation.

The petitioner had the opportunity to offer the testimony of Dr. Fernández who assisted him and gave him treatment, but he failed to do so. Perhaps this doctor could have established a causal connection between the accident and the injury, but since petitioner failed to adduce any evidence to that effect, we do not think that he has established his right to the compensation sought.

The petition for review must be dismissed.